SO ORDERED.

Dated: December 27, 2019

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **In re:** | ) | Chapter 7 Proceedings |
| **ELIOT CHRISTOPHER TOMASZEWSKI and LORI LYNN SHOCKLEY,** | ) ) ) ) | Case No.: 2:18-bk-06067-DPC<br><br>Adversary No.: 2:18-ap-00361-DPC |
| **Debtors.** | ) | |
| **KATHLEEN TERESA STRATTON,** | ) ) | |
| **Plaintiff,** | ) | **UNDER ADVISEMENT ORDER** |
| v. | ) | |
| **ELIOT CHRISTOPHER TOMASZEWSKI and LORI LYNN SHOCKLEY,** | ) ) ) ) | **[NOT FOR PUBLICATION]** |
| **Defendants.** | ) | |

This adversary proceeding ("Adversary Proceeding") involves claims to deny Debtors' discharge and to hold non-dischargeable Plaintiff's claims against Defendants arising out of a series of loans and/or investments made with Defendants by Plaintiff in 2014. Having heard the parties' evidence at trial, having read the parties' post-trial briefs and having heard the arguments of counsel, the Court now rules in favor of Defendants and dismisses with prejudice all causes of action in Plaintiff's complaint.

## I. BACKGROUND

On August 31, 2018, Plaintiff Kathleen Teresa Stratton (formerly known as Kathleen Tidwell and now known as Kathleen Bechtel) ("Plaintiff" or "Bechtel"),

1

commenced this Adversary Proceeding by filing her seven-count complaint[1] against Eliot Christopher Tomaszewski ("Tomaszewski") and Lori Lynn Shockley ("Shockley"), husband and wife (collectively "Defendants"). Defendants filed their answer[2] on October 4, 2018. On December 13, 2018, the parties filed their Joint Discovery Plan[3] in which they agreed to set deadlines for (1) disclosures under Rules 7026 through 7037, (2) amendments to pleadings, (3) the completion of discovery, (4) the filing of dispositive motions and (5) the time when trial preparation would be concluded. Rule 26 disclosures were made in mid-December 2018.[4] At the December 17, 2018 initial scheduling conference, the Court adopted the parties' proposed schedule and set a trial date.[5] The trial was later re-scheduled for October 9 and 10, 2019.[6] A pretrial conference was held on August 19 at which time the Court ordered a pretrial statement be filed by September 15, 2019.[7] The pretrial statement was timely filed[8] and the trial commenced on October 9, 2019.

At the beginning of the trial (with no opposition from the Defendants), Plaintiff voluntarily dismissed four of her seven claims for relief.[9] At the conclusion of Plaintiff's case her counsel made an oral motion to amend the complaint to add a § 523(a)(4)[10] embezzlement count. The Court denied that motion as both untimely and not supported by the evidence in Plaintiff's case in chief. Plaintiff then orally moved to dismiss the balance of her § 523(a)(4) claim.[11] This unopposed motion was granted. At the conclusion of the trial, Plaintiff orally dismissed her § 727(a)(2) claims against Tomaszewski.[12] On November 18, 2019, the parties filed their stipulation[13] to dismiss

---

[1] DE 1. "DE" references a docket entry in this Adversary Proceeding 2:18-ap-00361-DPC.
[2] DE 5.
[3] DE 9.
[4] DE's 9-11.
[5] DE's 12 and 15.
[6] DE's 20 and 21.
[7] DE 23.
[8] DE 25.
[9] Plaintiff voluntarily dismissed the § 523(a)(2)(B), §§ 727(a)(4), (6), and (7) causes of action.
[10] Unless indicated otherwise, statutory citations refer to the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.
[11] Trial Transcript, October 10, 2019, 10:03 a.m.
[12] Trial Transcript, October 10, 2019, 10:46 a.m.
[13] DE 35.

Plaintiff's claims under §§ 727(a)(2)(A) (dismissed against Tomaszewski only), 727(a)(4) and 727(a)(7). Plaintiff's remaining claims, therefore, are comprised of only two causes of action, one against Tomaszewski and Shockley (Plaintiff's § 523(a)(2)(A) claim) and one cause of action against Shockley only (Plaintiff's § 727(a)(2)(A) claim).

## II. JURISDICTION

The parties agree this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(I) and (J) to enter final judgment in this adversary proceeding.[14]

## III. LEGAL ANALYSIS

A. § 523.

Under 11 U.S.C. § 523(a), a

> discharge under § 727…of this title:
> does not discharge an individual debtor from any debt –
> . . .
> (2) For money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by –
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To show fraud under § 523(a)(2)(A) a plaintiff must show: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained damage as the proximate result of the representation. *In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010). "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence." *In re Weinberg*, 410 B.R. 19, 35 (9th Cir. BAP 2009). *See also Grogan v. Garner*, 498 U.S. 279, 291 (1991). A person rarely admits to fraudulent conduct. *In re*

---

[14] DE 1, ¶ 1 and DE 5, ¶ 1.

*Golchin*, 175 B.R. 366, 367-68 (Bankr. S.D. Cal. 1993). Accordingly, a court can turn to circumstantial evidence or inferences drawn from a debtor's course of conduct to determine a debtor's intent. *In re Barrack*, 217 B.R. 598, 607 (9th Cir. BAP 1998).

The exception to dischargeability of debts under § 523(a)(2)(A) strikes a balance between competing goals. *In re Klapp,* 706 F.2d 998, 999 (9th Cir. 1983). The exception should be construed strictly against creditors and in favor of debtors in order to avoid unjustifiably impairing a debtor's fresh start. *Id.* Congress created the exception to preclude a debtor from retaining the benefits of property acquired by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors. *In re Slyman,* 234 F.3d 1081, 1085 (9th Cir. 2000) (quoting 4 Collier on Bankruptcy ¶ 523.08[1][a] (15th ed. rev.2000)); *See also In re Sabban*, 600 F.3d at 1222; *In re Deitz*, 469 B.R. 11, 24 (9th Cir. BAP 2012).

B. § 727.

Under 11 U.S.C. § 727:

> (a) The Court shall grant the debtor a discharge, unless –
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -
> (A) property of the debtor, within one year before the date of the filing of the petition; . . .

As the Ninth Circuit held in the *Matter of Rawson*:

> Because § 727(a)(2) is written in the disjunctive, a denial of discharge "need not rest on a finding of intent to *defraud.*" *In re Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996). "Intent to hinder or delay is sufficient." *Id.* Here, there is no genuine dispute that Rawson acted with intent to hinder or delay. Rawson admitted that she transferred money from her checking account into her father's checking account so the Cains "wouldn't take all the money that [she] was making"

4

and "[b]ecause the Cains took all [her] money out of [her] Bank of America accounts." "When a debtor admits that [s]he acted with the intent [to hinder or delay], there is no need for the court to rely on circumstantial evidence or inferences in determining whether the debtor had the requisite intent." *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986).

*Matter of Rawson*, 734 Fed. Appx. 507, 508 (9th Cir. 2018).

"A party seeking denial of discharge under § 727(a)(2) must prove two things: '(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's party to hinder, delay or defraud a creditor through the act [of] disposing of the property.'" *In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010) (citing *In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997)). The party objecting to discharge has the burden of proving by a preponderance of the evidence that debtor's discharge should be denied. *In re Khalil*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167, 1168 (9th Cir. 2009). For bankruptcy purposes, "[c]oncealment…includes preventing discovery…or withholding knowledge or information required by law to be made known." *In re Scott*, 172 F.3d 959, 967 (7th Cir. 1999) (citing *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984)).[15]

## IV. THE TRIAL

The trial began on October 9, 2019. Only Plaintiff was called to testify that first day because Plaintiff's only other witness decided at the last minute to appear only if served with a subpoena. Without objection from Defendants, the Court adjourned before noon and reconvened the next day.

On October 10, 2019, Plaintiff called Gina Donnelly ("Donnelly") then rested. Defendants called only Tomaszewski. The parties made closing statements but also requested an opportunity to file simultaneous briefs. The Court granted these requests, ordering that briefs be filed by October 25, 2019. Oral argument was scheduled for

---

[15] See also, *In re Hayes*, 229 B.R. 252 (1st Cir. BAP 1999); *In re Lindemann*, 373 B.R. 450 (Bankr. N.D. Ill. 2007); *In re Zimmerman*, 320 B.R. 800 (Bankr. M.D. Pa. 2005); *In re Palmer*, 419 B.R. 762 (Bankr. M.D. Tenn. 2009).

November 20, 2019, at 10:00 a.m. On October 25, 2019, Defendants filed Defendants' Post Trial Brief[16] and Plaintiff filed Plaintiff's Closing Memorandum.[17]

Plaintiff claims she transferred $45,000 to Tomaszewski[18] to purchase the Monte Way property and that this transfer was memorialized by a note dated January 31, 2014, and a deed of trust dated the same date. No note memorializing this January 31, 2014 loan was introduced into evidence at trial. Further, while the Monte Way deed of trust was dated January 31, 2014,[19] that document was not signed by Tomaszewski but, rather, by Shockley on July 28, 2014, and was then recorded on August 1, 2014.

Bechtel testified that, on February 26, 2014, she transferred to Tomaszewski $50,000[20] to acquire the Cotton Court property and that this amount was due to be repaid on August 26, 2014, together with interest at 25% per annum. This loan, she claims, was memorialized in a note dated February 26, 2014.[21]

Bechtel also testified that she loaned $85,000 to Tomaszewski on February 13, 2014, to acquire the Sonoran Heights property. Bechtel contends a note for $85,000 and a deed of trust against the Sonoran Heights property were both prepared in February 2014 and that the note was signed on February 13, 2014, but that the Sonoran Heights deed of trust was not signed or recorded until on or after July 29, 2014.[22] Interestingly, while the Sonoran Heights deed of trust was in the amount of $85,000, the trustor under that deed of trust was neither of the Defendants. Rather, since the Defendants' sister-in-law, Sarah Howard ("Howard"), took title to the Sonoran Heights property, she was the trustor under that deed of trust. Howard signed the deed of trust on July 28, 2014, a fact confirmed by the notary public who witnessed Howard's signature on the same date. No note memorializing this February 13, 2014 loan was introduced into evidence at trial.

---

[16] DE 32.
[17] DE 33.
[18] See Trial Transcript, October 9, 2019, 10:24 a.m.
[19] See Ex. 2, pp. 37-42.
[20] See Trial Transcript, October 9, 2019, 10:24 a.m.
[21] See Ex 8.
[22] See Ex 12, pages 1-6.

Tomaszewski's testimony conflicted with Bechtel's testimony in several important respects. Tomaszewski testified that no notes or deeds of trust were prepared or executed by anyone until after the Cotton Court property was sold in July 2014 and Bechtel was not repaid any of the $50,000 which she transferred to Tomaszewski to acquire Cotton Court. Tomaszewski also testified that, while he received the $45,000 from Bechtel on or about February 26, 2014 to acquire Monte Way, the Monte Way note was not actually signed or prepared then. Rather, he testified it was prepared after the sale of Cotton Court (July 2014) and then back dated by Tomaszewski and Shockley to February 26, 2014. Tomaszewski further testified that the Monte Way deal with Bechtel was a joint venture, a profit splitting arrangement, not a loan by Bechtel to Tomaszewski. Tomaszewski testified that all his deals with Bechtel were oral agreements at the outset but the three deals at issue were only reduced to writing in 3Q2014 once Bechtel became upset after receiving no payment at the close of the Cotton Court sale.

## V. POST-TRIAL BRIEFS

A. Plaintiff's Closing Memorandum.

Plaintiff's Closing Memorandum raises a number of points which are summarized as follows:

**§ 523 Claim**. Defendants borrowed $180,000 from Plaintiff so they could buy and sell three residential properties. Defendants promised to record deeds of trust in second position securing Bechtel's claims on each of these three properties and promised to repay Plaintiff each of the three loans when the properties sold. Bechtel claims that Defendants did not intend to record these liens and did not intend to treat these three loans as they did with their two 2013 transactions with Bechtel. Bechtel contends there were sufficient sales proceeds from each of the three sales to satisfy Bechtel's claims. Bechtel also contends that notes and deeds of trust on Cotton Court, Monte Way and Sonoran Heights were prepared in 1Q2014, not in 3Q2014, as Tomaszewski testified. In Plaintiff's view, the fact that the name "Tidwell" appears on the notes and deeds of trust dated in 1Q2014

indicates these documents had to have been prepared in 1Q2014 because by the end of 2014 she had remarried and the notes dated January 31, 2014 and February 13, 2014 reflect Bechtel's name as "Tidwell." Bechtel also agrees that her 2013 transactions with Tomaszewski had to have been secured because a title company transferred Bechtel's loan payoff directly towards the purchase of the Sonoran Heights property. Bechtel contends she proved all five elements of her § 523(a)(2)(A) claim.

**§ 727 Claim**. Bechtel contends Shockley hindered and delayed Bechtel's efforts to collect on her pre-bankruptcy judgment against Debtors because she had Donnelly hire her as an independent agent so that Bechtel would be thrown off the scent of where Bechtel's earnings could be garnished. Bechtel believed Shockley worked at ProSmart Realty but learned through garnishment proceedings in November 2017 that Shockley had moved her real estate sales business under Donnelly's real estate practice at ProSmart. This apparently defeated Bechtel's pre-bankruptcy garnishments of ProSmart. Bechtel contends Shockley's employment relocation enabled her to conceal from her creditors at least $20,000 of income earned in the year prior to Shockley's May 29, 2018 bankruptcy filing.

Bechtel contends Shockley's § 727(a)(2)(A) liability was incurred for the benefit of her marital community so both Debtors must be denied a discharge in these bankruptcy proceedings. Bechtel also claims she is entitled to an award of fees in accordance with the U.S. Supreme Court decision of *Cohen v. De La Cruz*, 523 U.S. 213, 223 (1998). In addition to fees, Bechtel contends her damages total $120,787.67 on Cotton Court, $12,123.29 on Sonoran Heights, and $33,567 on Monte Way plus interest on these three sums.

B. <u>Defendants' Post-Trial Brief</u>.

Defendants' Brief is broken into four parts containing the following arguments together with many case citations (almost all of which involve cases outside the Ninth Circuit):

**§ 523(a)(2)(A) Defense**. Whether denominated as a loan or investment, Debtors acknowledge "[t]here is a debt of money owed to the Plaintiff."[23] The Court must narrowly construe discharge exceptions. Plaintiff claims Defendants promised to record liens on the three properties to be purchased with Plaintiff's money. Defendants deny these promises were ever made and, in any event, contend a promise of a future action cannot be a "knowing and fraudulent falsehood describing a past or current fact." Moreover, Defendants repaid 64% of the principal balance of their debts to Plaintiff so this demonstrates Defendants' intent to repay Plaintiff, not an intent to defraud her. Defendants did not produce evidence of where the property sales proceeds went because it simply does not matter. The money from these three sales did not fully repay Plaintiff.

**§ 727(a)(2)(A) Defenses**. Shockley asserts that she had no duty to tell the garnishing creditor/Plaintiff she changed her place of business or where she was newly employed. Defendants did not conceal her income or new job as evidenced by her filing with the State or IRS a W2 or 1099 form.

**Community Discharge**. Defendants' contend a § 727 discharge in favor of Tomaszewski combined with a successful defense by both Defendants on Plaintiff's § 523 claims will liberate community property earned by the Debtors after their bankruptcy filing.[24]

**Attorneys' Fees**. Defendants cite § 523(d) and contend that, if they prevailed on their § 523 defense, they are entitled to fees because Plaintiff's failure to carry her burden by a preponderance of the evidence means the Court cannot find the Plaintiff was "substantially justified" in her § 523 claims. Defendants' Brief concludes by callously observing Plaintiff lost "her nest egg in a get rich quick scheme that just did not work for her . . ."

---

[23] DE 32, page 2.
[24] Defendants' Brief also makes an interesting reference to Vizzini's monologue from the movie *The Princess Bride*.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW[25]

The Court finds, and all parties agree, that Bechtel is owed the amount stated in the pre-bankruptcy judgment obtained by Bechtel against the Defendants. The issues this Court needs to decide, however, are whether these significant amounts were proven at trial by Bechtel to be nondischargeable under § 523(a)(2)(A) or whether the Shockley's discharge must be denied under § 727(a)(2)(A).

Bechtel was friends with both of the Defendants, particularly Tomaszewski. Prior to the three transactions which are the subject of this Adversary Proceeding, Bechtel twice placed money with Tomaszewski. Tomaszewski, in turn, invested those funds towards the July 20, 2013 purchase of a residential property on 21st Ave ($37,000 investment by Bechtel) and to acquire a residential property on Pinchot ($85,000 investment by Bechtel). These investments produced a return to Bechtel of both the principal amounts she placed with Tomaszewski plus interest at the rate of 25% per annum. No documents were produced at trial concerning either of these transactions. The amounts advanced by Bechtel to Tomaszewski comprised virtually all of the money Bechtel realized from her divorce which was completed just before she entered into those two transactions.[26]

In January and February 2014, Bechtel loaned or invested with Tomaszewski the total sum of $190,000 in four separate disbursements. One loan to Tomaszewski for $10,000 was repaid as planned. The other three loans are the subject of this Adversary Proceeding. As noted in **Attachment 1**, Bechtel transferred to Tomaszewski:

(1) $45,000 to acquire a property on Monte Way; and

(2) $50,000 to buy the Cotton Court property.

Bechtel then caused $85,000 to be transferred from the Pinchot sale escrow to the Sonoran Heights purchase escrow. All properties which were the subject of Bechtel's transactions with Tomaszewski are residential properties. Bechtel, Tomaszewski and Shockley were

---

[25] This Order constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.
[26] Trial Transcript, October 9, 2019, @ 10:36 a.m.

all licensed by the State of Arizona as residential realtors (at least until Tomaszewski's license was suspended for 30 days beginning July 15, 2015[27]).

Cotton Court was sold on July 7, 2014. Bechtel received $0 from this escrow closing, leaving her with an unpaid balance of $50,000 on that loan. This amount was memorialized in an unsecured note dated February 26, 2014. Contrary to Bechtel's testimony but consistent with Tomaszewski's testimony, the Court finds the Cotton Court note was prepared after the July 2014 sale closing on Cotton Court. When Bechtel realized she would be paid nothing from the sale of the Cotton Court property, she promptly sounded the alarm. She demanded that the Cotton Court obligation be reduced to writing, that it reflect that this loan was made in February 2014, and that interest was accruing from that date at 25% per annum.

Realizing in July 2014 that she could also find herself exposed on her Monte Way and Sonoran Heights transactions, Bechtel insisted that deeds of trust be recorded in her favor on both of those properties. Bechtel was surprised to learn that Tomaszewski owned neither Monte Way nor Sonoran Heights even though that is who she invested with. The fact that Monte Way was titled to Tomaszewski's wife, Shockley, would have been a bit surprising to Bechtel but the fact that Howard held title to Sonoran Heights had to be outright stunning. Bechtel was dealing with Tomaszewski, not Shockley and certainly not Howard. Bechtel did not know this until after Cotton Court sold and only because she was not paid from that sale.

Bechtel did not introduce at trial any promissory notes from 1Q2014 pertaining to Monte Way or Sonoran Heights because no notes were prepared at that time. If they were prepared in 1Q2014, Bechtel would be holding those notes or would have placed them with a loan servicing agent. She did not do so because nothing was reduced to writing on any of these transactions until 3Q2014. The Monte Way, Sonoran Heights and Cotton Court deals were initially between Bechtel and Tomaszewski and all were done orally; they were handshake deals between friends. Moreover, the deeds of trust on Monte Way

---

[27] See Ex. 5, pages 6-19, the July 14, 2015 Consent Order between Tomaszewski and the Arizona Department of Real Estate.

11

and Sonoran Heights were not prepared in 1Q2014.  They were prepared when Bechtel insisted they be prepared, that is, after the 3Q2014 sale of Cotton Court.  Had notes and deeds of trust been prepared on all three properties in 1Q2014, Bechtel would have then learned that, while her money was given to Tomaszewski, Shockley alone owed Cotton Court and Monte Way and Sonoran Heights was owned by Howard.  None of this was known to Bechtel until 3Q2014.  In response to this Court's questions at trial, Bechtel admitted she drafted the Cotton Court note[28] and that she also drafted the Sonoran Heights and Monte Way deficiency notes.[29]  As to the Cotton Court note, the Court finds Bechtel's testimony implausible when she testified that the title company in 1Q2014 prepared all the documents except the Cotton Court note. The Court finds the title company would more likely have prepared all or none of these transaction documents in 1Q2014. The title company would not likely have prepared the Cotton Court deed of trust but not the corresponding note. The Court finds Bechtel did indeed prepare the Cotton Court note but not until after the Cotton Court property was sold. Again, the Court finds no documents were prepared to memorialize any of the Bechtel/Tomaszewski transactions until after the Cotton Court property was sold in July 2014.

When Monte Way was sold on March 20, 2015, Bechtel received only $31,433.39, leaving her with an unpaid principal balance of $13,566.61 on her $45,000 "loan."  This amount was memorialized in an unsecured deficiency note dated March 30, 2015 in the principal amount of $13,566.61.[30]  This is the only Monte Way related note introduced at trial because it was the only Monte Way note ever prepared.

The Sonoran Heights property sale closed on November 17, 2014 from which Bechtel was paid $80,000, leaving her with an unpaid principal balance of $5,000 on her $85,000 loan.  This amount was memorialized in an unsecured deficiency note dated November 18, 2014 in the principal amount of $21,386.71.[31]  This is the only Sonoran

---

[28] Ex 8.
[29] See Trial Transcript, October 9, 2019, 9:39 a.m.
[30] Ex. 10.
[31] Ex. 9.

Heights related note introduced at trial because it was the only Sonoran Heights note ever prepared.

The Defendants made some payments on the three notes after each of these three properties were sold.[32] However, Defendants eventually defaulted on the notes. Bechtel sued Defendants in the Arizona Superior Court, Maricopa County ("State Court"), ultimately obtaining a default judgment[33] against each of them on September 1, 2016, in the amount of $102,763.74 plus interest. Plaintiff garnished ProSmart Realty in November 2017 because she thought Shockley was then employed there. In connection with the State Court garnishment proceedings, Bechtel learned Shockley had moved her real estate business under Donnelly's real estate operations which were also conducted through the ProSmart Realty brokerage house.

Defendants filed their voluntary chapter 7 bankruptcy petition on May 29, 2018.

The § 523 Claims.

The Court now finds Tomaszewski's version of Defendants' dealings with Bechtel to be credible and that Bechtel's version of the story lacks credibility. First, Plaintiff introduced no documentary evidence suggesting her 2013 transactions with Tomaszewski were in writing. Transferring Bechtel's money from a title company's escrow closing on the Pinchot property to fund Bechtel's investment in the Sonoran Heights property does not prove Bechtel was secured by a lien in the Pinchot transaction. Defendants could have directed that the Pinchot sale proceeds (otherwise earmarked for them) be sent to the Sonoran Heights purchase escrow. Second, nothing in Bechtel's testimony suggested she was dealing with Howard at the time of the acquisition of the Sonoran Heights property. This does not square with Bechtel's testimony that the Sonoran Heights note and deed of trust were prepared when her Sonoran Heights loan was made in February 2014. Tomaszewski's testimony is more plausible in this regard.

---

[32] See Ex. 7.
[33] Ex 10.

13

Additionally, at the November 20, 2019 closing arguments, Plaintiff admitted that she did not seek production of any documents from the title company but instead relied on Defendants to produce those documents. Plaintiff's §523 claim essentially comes down to whether promissory notes existed at the time the transactions were entered into. Why didn't Plaintiff seek production of the promissory notes from the title company who allegedly prepared them? This suggests Mr. Tomaszewski's story of backdating the Monte Way and Sonoran Heights deeds of trust and Cotton Court note is more probable than Bechtel's testimony.

The Court finds that, while Bechtel transferred money (or caused money to be transferred) to Tomaszewski in January 2014 (the Monte Way money), February 2014 (the Sonoran Heights money), and late February 2014 (the Cotton Court money), these transactions were based on oral agreements between the parties. Nothing was committed to writing on any of these three transactions until the Cotton Court property was sold on July 7, 2014. Bechtel only then came to understand she would be paid nothing from the Cotton Court sale. The Court finds Bechtel was horrified to learn that she may well have been out the $50,000 she advanced to Tomaszewski towards the Cotton Court transaction. When faced with this possibility, she immediately pushed Defendants to memorialize obligations to her on the $50,000 Cotton Court loan and to memorialize and secure the Defendants' obligations to Bechtel on the Monte Way and Sonoran Heights properties.

These findings are significant to Bechtel's § 523(a)(2)(A) claim because Bechtel contends Defendants intended to defraud her when these three transactions were entered into in 1Q2014 because they told her they would record deeds of trust in Bechtel's favor on each of the three properties. If Defendants intended at the outset to defraud Bechtel why would they, months later, sign deeds of trust in favor of Bechtel, cause the deeds of trust against Monte Way and Sonoran Heights to then be recorded, sign deficiency notes after the Monte Way and Sonoran Heights properties were sold, and then pay her other amounts thereafter? Indeed, a February 2014 $10,000 loan by Bechtel to Tomaszewski was fully paid in 2014, without a note or a lien recording.

This Court accepts Tomaszewski's testimony to the effect that no documents were created or signed between the parties until after the July 2014 Cotton Court sale. The Court also finds neither Tomaszewski nor Shockley promised to record deeds of trust in favor of Bechtel when these three deals were initiated. In other words, neither Tomaszewski nor Shockley obtained "money, property, services, or an extension, renewal, or refinancing of credit… through false pretenses, a false representation or actual fraud" within the meaning of § 523(a)(2)(A).

This Court finds Bechtel did not carry her burden of persuasion on the claim that Defendants intended to defraud her in 1Q2014 when they obtained $180,000 from Bechtel. The Court finds Tomaszewski and Shockley entered into these three transactions in 1Q2014 with the intent to fully repay Bechtel. Bechtel failed to persuade this Court that Defendants made any misrepresentation that induced Bechtel to advance funds to them. Moreover, this Court finds Bechtel did not rely on Defendants to record secured interests in favor of Bechtel on any of the three properties in 1Q2014 because none of the required documents were prepared at that time. Even if the documents were prepared in 1Q2014, Bechtel, not Defendants, should have attended to the execution and recordation of the deeds of trust, as well as the safekeeping of the three notes. Bechtel was a real estate professional. She knew or should have known that Arizona's statute of frauds required transactions like these to be in writing. Moreover, it was also unreasonable for Bechtel, a real estate lender, to rely on the Defendants/borrowers to record security documents which were solely for Bechtel's protection.

The Court finds Defendants had no duty to prepare notes or deeds of trust in connection with any of their transactions with Bechtel nor did Tomaszewski or Shockley represent to Bechtel in 1Q2014 that they would record or arrange for the recordation of deeds of trust on any of these three properties.

Having failed to sustain her burden of proof on her § 523(a)(2)(A) claims, such claims are hereby dismissed with prejudice.

The § 727 Claims.

As to Plaintiff's § 727(a)(2)(A) claim, Bechtel contends that Shockley moved her real estate business under Donnelly's license so as to avoid having her real estate commissions garnished by Bechtel. However, Donnelly testified that Shockley first approached her in June 2016 (approximately 3 months before Plaintiff's default judgment) about the possibility of coming to work for Donnelly. At that time Shockley explained to Donnelly that Shockley and Tomaszewski "were having differences in their business and she was going to be looking for someplace else to hang her license..."[34] Shockley was apparently then working under SWO Real Estate, LLC dba SWO Properties ("SWO") an entity owned by the Defendants. SWO also worked under the ProSmart brokerage entity.

Donnelly testified that, after winding up some business matters at SWO, Shockley eventually joined Donnelly in March 2017 and became her co-agent under the ProSmart real estate brokerage license. Donnelly testified that Shockley brought with her a couple of real estate listings. After May of 2017 Shockley closed about 6 deals which produced commissions that were paid to ProSmart which then wrote checks to Donnelly who, in turn, wrote commission checks to Shockley in the aggregate amount of in excess of $20,000.[35]

Donnelly also testified that when Plaintiff garnished ProSmart in November 2017 in an effort to partially satisfy her default judgment against the Defendants and SWO, Donnelly terminated her business relationship with Shockley. However, Donnelly wanted one last deal to close so Plaintiff could be paid Shockley's commission. No evidence was submitted as to whether that deal closed, whether Shockley was entitled to a commission from that deal or whether any commission earned by Shockley was paid over to Plaintiff in connection with the garnishment proceedings in State Court.[36]

---

[34] Trial Transcript, October 10, 2019, @ 9:08.
[35] Although Donnelly testified that she issued to Shockley a 2017 IRS Form 1099 an amount in excess of $20,000, that 1099 was not introduced into evidence.
[36] Since Plaintiff's damage calculations in Ex. 7 reflect no payments to Plaintiff after August 24, 2015, the Court must assume no monies were paid over to Plaintiff in connection with any of Plaintiff's post-judgment collection efforts.

16

Case 2:18-ap-00361-DPC    Doc 38    Filed 12/27/19    Entered 12/27/19 14:56:40    Desc
Main Document    Page 16 of 19

It is not unheard of for judgment debtors to resign their employment when a judgment creditor garnishes their earnings but the Court has found no cases suggesting that changing one's place of employment in the year prior to a bankruptcy filing and in the face of judgment collection efforts constitutes a violation of § 727(a)(2)(A) nor has Plaintiff cited any case for this proposition. Moreover, judgment debtors are also known to transfer non-exempt assets to assets which are exempt and that has generally been found to not violate § 727(a)(2)(A).[37]

Plaintiff suggests that Shockley was concealing her employment from Plaintiff in an effort to hinder or delay Plaintiff's collection efforts. Defendants suggest Defendants had no obligation to tell a judgment creditor where they were employed or if they were employed. This Court agrees that Shockley's failure to disclose to Plaintiff or her counsel where Shockley was employed does not constitute a violation of § 727(a)(2)(A).[38]

Plaintiff, of course, bears the burden of persuading the Court that she has established grounds to deny Shockley's discharge under § 727(a)(2)(A). The Court finds Plaintiff failed to carry her burden of proving that, when Shockley moved her real estate business (including a couple of real estate listings) from SWO to Donnelly, this move and/or the failure to notify Plaintiff of this move was done with Shockley's intent to hinder, delay or defraud Plaintiff or any other creditor of Shockley. Prior to Plaintiff's September 1, 2016 judgment against the Defendants and SWO, Donnelly was told by Shockley that she wanted to work with Donnelly because she was having differences in her business with Tomaszewski. This stated motive to move Shockley's real estate business was never refuted sufficiently by Plaintiff. Having failed to carry her burden of persuasion, Plaintiff's § 727(a)(2)(A) claims are hereby dismissed with prejudice.

---

[37] Generally, the conversion of nonexempt assets to exempt assets is permitted. See *In re Stern*, 345 F.3d 1036 (9th Cir. 2003) (conversion of nonexempt property to exempt property on the eve of bankruptcy not fraudulent per se); *Ford v. Poston*, 773 F.2d 52 (4th Cir. 1985) (conversion of nonexempt property to exempt property normally permitted unless there is extrinsic evidence of fraud).

[38] No evidence was introduced at trial to the effect that Shockley falsely testified in post-judgment proceedings concerning her employment status or that Plaintiff or her counsel even asked Shockley where she was employed at any given time.

**CONCLUSION**

Although the Court agrees with Defendants' characterization of these transactions as "sloppy" and it is undisputed that Plaintiff failed to realize her expected recovery, none of the conduct complained of by Plaintiff rises to the level of misconduct contemplated by §§ 523(a)(2) or 727(a)(2)(A).

Although Defendants seek attorneys' fees incurred in connection with this case under § 523 (d), no fees will be awarded to Defendants under this Section because § 523(d) allows fees only in connection with the defense of a § 523(a)(2) consumer debt. The transactions between these parties resulted in Defendants' commercial obligations, not consumer debts. Moreover, Plaintiff's claims were plausible and reasonably based and, if proven by Plaintiff, would have resulted in a judgment in Plaintiff's favor. The Court finds no basis for the award of attorneys' fees in favor of the Defendants.

Defendants are directed to file a form of judgment consistent with this Order.

**DATED AND SIGNED ABOVE**.

**Attachment 1**

|  | Monte Way (Ex. 2) | Sonoran Heights (Exs. 3 and 12) | Cotton Court (Ex. 1) |
|---|---|---|---|
| Title Owner: | Lori Shockley | Sarah Howard | Lori Shockley |
| Purchase Date: | 01/31/2014 | 02/14/2014 | 02/27/2014 |
| Loan/Investment Date: | 01/31/2014 | 02/13/2014 | 02/26/2014 |
| DOT Recording Date: | 08/01/2014 | 07/29/2014 or later | N/A |
| Sale Date: | 03/20/2015 | 11/17/2014 | 07/07/14 |
| Purchase Price: | 150,000 | 355,000 | 230,000 |
| Mortgage Amount: | 127,000 | 297,500 | 210,000 |
| Down Payment: | 22,500 | 60,560 | 20,000 |
| Sale Price: | 188,000 | 387,700 | 267,000 |
| Sale Price minus 1st Mortgage: | 60,500 | 90,200 | 57,000 |
| Bechtel Loan/Investment Amount: | 45,000 | 85,000 | 50,000 |
| Bechtel Repaid at sale: | 31,433 | 80,000 | 0 |